# Commonwealth v. Turner

*Thomas Bianco, district attorney,* for Commonwealth.

*Gary Knaresboro* and *Michael Marshall,* for defendant.

OLSON, *J.,* December 14, 2009—Before the court is the Commonwealth's motion for pretrial relief regarding the determination of defendant's alleged mental retardation per *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242 (2002). This motion asks the court to resolve the following issues pretrial: (1) Where a capital defendant properly raises a mental retardation claim, is this factual issue to be resolved by judge or jury; (2) How is the burden of proof on this issue to be allocated; and, (3) other than examination, is the Commonwealth entitled to mental retardation-related discovery from defendant?[1]

## FACTUAL AND PROCEDURAL HISTORY

The court develops this history from papers filed.

On October 27, 2008, the mother of the victim, Leonard William McIntrye, 19 months old, left the infant in

---

1. The parties agree that the Commonwealth is entitled to examine defendant to examine the issues raised by defendant's mental retardation expert.

the care of defendant, then 18 and born on November 23, 1989. The Commonwealth alleges that, while the baby was in his care, defendant hit, bit, strangled and otherwise injured the victim. After the victim died on November 1, 2008, allegedly as a result of injuries inflicted by the defendant, the Commonwealth charged the defendant with criminal homicide.

On August 12, 2009, pursuant to Pa.R.Crim.P. 802, the Commonwealth filed a notice of aggravating circumstances. Specifically, the Commonwealth declared it intended to seek the death penalty because of the presence of two aggravating circumstances enumerated at 42 Pa.C.S. §9711: (1) The victim was a child under the age of 12 years of age at the time of the killing; and (2) The Commonwealth alleged the offense was committed by means of torture.

On September 16, 2009, defendant filed a "notice of defense of insanity or mental infirmity and notice of expert evidence of mental condition," which included a statement that, "defendant intends to introduce expert evidence . . . on the issue of punishment in a capital case."

On October 8, 2009, defendant petitioned the court to set a pretrial hearing to determine whether he was mentally retarded within the meaning of *Atkins*. The court directed the defendant to file an amended motion setting forth evidence raising an *Atkins* claim. On November 3, 2009, defendant amended his motion to attach a report by Dr. R. William Tallichet Psy.D., licensed psychologist.

Dr. Tallichet opined defendant was mentally retarded within the meaning of *Atkins*. As bases for his opinion,

Dr. Tallichet identified the results of a D.S.M.-IV-TR evaluation and WAIS-III tests he administered on defendant. These results, Dr. Tallichet wrote, revealed defendant had a full-scale IQ of 71 and exhibited deficits in self-care, social/interpersonal skills, self-direction, functional academic skills, work and safety. Finally, Dr. Tallichet concluded that, given defendant's exam age of 19 years and 11 months, and "given his past deficits and academic functionings/cognitive abilities, along with the relative stability of intelligence," his mental retardation predated his 18th birthday.

The court, by order of November 6, 2009, determined that defendant's *Atkins* mental retardation claim must be decided at trial by a fact-finder and therefore denied defendant's motion for pretrial hearing.

On November 10, 2009, the Commonwealth filed several motions for pretrial relief regarding the determination of defendant's alleged mental retardation. These motions included a request that the court declare that defendant has the burden to prove his *Atkins* mental retardation claim by the preponderance of the evidence, and a motion for discovery of materials utilized by Dr. Tallichet and any other defense insanity or mental infirmity experts.

Following argument, these issues are now before the court for disposition.

### *ATKINS/MILLER* HOLDING

Any overview of the mental retardation/capital punishment issue must begin with *Atkins,* together with any implementing Pennsylvania authority.

Daryl Renard Atkins and a co-conspirator drove to a convenience store to rob a customer, Eric Nesbitt. They abducted him and drove to a nearby automated teller machine, where they forced him to withdraw two hundred dollars. Then they drove him to a deserted area and, ignoring his pleas, they ordered Nesbitt out of the vehicle and shot him eight times, killing him.

The Commonwealth of Virginia sought the death penalty. The jury convicted Atkins of first-degree murder. The jury then heard sentencing hearing testimony about Atkins' mental condition. Specifically, the defense offered evidence that Atkins had a full-scale IQ of 59. Dr. Nelson, Atkins' penalty phase expert, also testified that, in his opinion, Atkins' limited intellect had been a consistent feature throughout his life, and that his IQ score of 59 was not an "aberration, malingering result, or invalid test score."

Atkins was sentenced to death. Because of trial error, the Virginia Supreme Court ordered a re-trial. Atkins again was sentenced to death. The Virginia Supreme Court affirmed. The United States Supreme Court reversed. In a 6-3 decision, the United States Supreme Court held that, under the Eighth Amendment to the United States Constitution, a mentally retarded offender could never be executed, regardless of crime or circumstance.

In footnote 3 of the majority opinion, the court appeared to embrace the functional definition of "mental retardation" adopted by The American Association on Mental Retardation (AAMR) as well as a similar definition the American Psychiatric Association (DSM-IV).

These definitions articulate three concurrent criteria: (Criterion A) significantly sub-average general intellectual functioning; (Criterion B) significant limitation and adaptive functioning in at least two of the following skills areas, communication, self-care, home living, social/interpersonal skills, use of common resources, self-direction, functional academic skills, work, leisure, health, and safety; and (Criterion C) onset before 18 years.

Beyond this definition, *Atkins* provides scant procedural guidance. Instead, the Supreme Court left to the states the task of developing appropriate ways to enforce the constitutional restriction upon the execution of the mentally retarded. *Atkins,* 536 U.S. at 317.

The Pennsylvania Supreme Court first visited this issue in *Commonwealth v. Miller,* 585 Pa. 144, 888 A.2d 624 (2005). *Miller* was a PCRA proceeding where defendant, after a pre-*Atkins* conviction and sentence, raised *Atkins* as a basis for post-conviction relief. The Pennsylvania Supreme Court held the defendant asserting an *Atkins* claim may establish mental retardation as defined by either the American Association of Mental Retardation or diagnostic and statistical manual of mental disorders 4th ed. (DSM-IV). The court also held that, in a PCRA proceeding, the trial court must hold a hearing before it determines whether a defendant is mentally retarded within the meaning of *Atkins.*

Like *Atkins, Miller* declined to lay out any procedural framework for a non-PCRA determination of *Atkins* issues. Specifically, in footnote 3, it reserved decision as to whether an *Atkins* claim was to be resolved by a judge or jury at trial. Instead, in the spirit of *Atkins,* the Pennsylvania Supreme Court in *Miller* called upon the state

legislature to develop a procedural framework for the determination of *Atkins* issues.

The Pennsylvania Legislature still has not acted to implement *Atkins*. But that inaction does not affect the outcome here because the substantive questions of who bears the burden of proof in an *Atkins* claim, or whether the claim is decided by a judge or jury, are controlled by constitutional principles no legislation can alter.

## FACT-FINDING AND BURDEN OF PROOF ALLOCATION

Although the United States Supreme Court has determined that a mentally retarded person can never be executed, and the Pennsylvania Supreme Court has adopted a definition of mental retardation that trial courts are to apply in capital felony cases where mental retardation is at issue, the parties' questions here—who decides an *Atkins* claim, and how is the burden of proof to be allocated are not directly addressed. In this case, the Commonwealth takes no position on whether a judge or jury makes this decision, but the Commonwealth contends the burden of proof falls on the defendant by a preponderance of evidence; while defendant argues an *Atkins* claim ultimately is a jury question and the burden of proof falls on the Commonwealth beyond a reasonable doubt.

Two United States Supreme Court decisions provide the constitutional framework for this court's resolution of these issues.

In *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (U.S. 2000), the Supreme Court dealt with the issue

of whether the applicability of New Jersey's hate-crime statute was to be made by judge or jury.

Charles C. Apprendi fired several shots into the home of an African-American family and made a statement (later retracted) that he did not want the family in his neighborhood because of their race.

The State of New Jersey charged Apprendi with second-degree possession of firearm for an unlawful purpose. This offense carried a prison term of five to 10 years. The court did not refer to New Jersey's hate crime statute, which provided for an enhanced sentence if the defendant committed the crime with a purpose to intimidate a person or group because of certain factors including race.

Apprendi pled guilty to second-degree possession of a firearm. The prosecutor then filed a motion to enhance the sentence. Acting under New Jersey law, a trial judge decided, by a preponderance of the evidence, that Apprendi committed the crime with the purpose to intimidate a person or group because of race. The trial judge then sentenced Apprendi to a 12-year term (larger than the maximum sentence the enhanced sentence provided) on the firearms count.

Apprendi appealed, claiming that, because the hate crime finding exposed him to a longer maximum sentence, the due process clause required that such a finding be proved to a jury beyond a reasonable doubt. The New Jersey Supreme Court rejected this challenge and affirmed Apprendi's sentence.

The United States Supreme Court reversed. The Supreme Court held that "Other than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 489, 120 S.Ct. at 2362-63.

Although *Apprendi* was not a capital felony case, its holding carried implications for capital felony jurisprudence. If a penalty phase trial in a capital felony involved proof of facts not already resolved in the preceding guilt phase trial, is it constitutionally required that such matters be resolved by the jury on Commonwealth proof beyond a reasonable doubt? This was the matter before the United States Supreme Court in *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428 (2002).

A jury found Ring guilty of felony murder occurring in the course of armed robbery. Under Arizona law, Ring could not be sentenced to death unless further findings were made by a judge conducting a separate sentencing hearing. In accord with statutory requirements, the judge in *Ring* determined the existence or nonexistence of statutorily enumerated "aggravating circumstances" and any "mitigating circumstances", then applied these findings to a statutory requirement that the death sentence may be imposed only if the judge finds at least one aggravating circumstance and no mitigating circumstances sufficiently substantial to call for leniency. Finally, because the jury had convicted Ring of felony murder, not premeditated murder, so that Ring would be eligible for the death penalty only if he was the victim's actual killer, the trial judge made a further factual finding that Ring killed the victim. The Arizona Supreme Court affirmed the sentence of death. The United States Supreme Court agreed to hear defendant's appeal.

A concern before the United States Supreme Court in *Ring* was a prior decision it had rendered in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047 (U.S. 1990). In that case, the Supreme Court had held that Arizona's sentencing scheme was compatible with the Sixth Amendment because the additional facts found by the judge were sentencing considerations, not elements of the offense of capital murder. The Supreme Court, recognizing that it had held in *Apprendi* that the Sixth Amendment does not permit a defendant to be exposed to a penalty exceeding the maximum he would receive according to the facts that reflected in the jury verdict alone, now needed to weigh that reasoning against the court's holding in *Walton.*

The Supreme Court, in reversing Ring's death sentence, held: "*Apprendi*'s reasoning is irreconcilable with *Walton's* holding in this regard, and today we overrule *Walton* in relevant part. Capital defendant, no less than non-capital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Ring,* 536 U.S. at 588, 122 S.Ct. at 2432.

Arizona had argued *Apprendi* should not apply because the jury guilt phase verdict authorized the sentence options of life or death which a judge thus should be free to determine. In response, the Supreme Court majority stated: "This argument overlooks *Apprendi's* instruction that 'the relevant inquiry is not one of form, but of effect' . . . In effect 'the required finding (of an aggravated circumstance) expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty verdict.'" *Id.* at 602, 122 S.Ct. at 2440. The court concluded: "if Arizona

prevailed on its opening argument, *Apprendi* would be reduced to a 'meaningless and formalistic' rule of statutory drafting." *Id.* at 604, 122 S.Ct. at 2440-41.

In a concurring opinion, Justice Scalia (Justice Thomas joining) observed the majority concept had a reach broader than aggravating factors:

"I believe that the fundamental meaning of the jury trial guarantee of the Sixth Amendment is that *all facts* essential to imposition of the level of punishment that the defendant receives—whether the statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury beyond a reasonable doubt." *Id.* at 610, 122 S.Ct. at 2444. (emphasis added)

This court draws on the holdings and rationales of *Atkins; Apprendi* and *Ring* to resolve the issues now before it.

A threshold question common to the judge versus jury and burden of proof issues is whether the possible mental retardation of the defendant is an element in a capital case penalty phase hearing.

The Commonwealth claims mental retardation is not an element and refers to it instead as a "super mitigating factor". However, as *Apprendi* teaches, the test is effect, not label. Slapping a "super mitigating factor" label on an *Atkins* claim does not make it function or act like a mitigator.

An understanding of the functional difference between aggravators and mitigators may assist in understanding the function of a mental retardation claim in a capital case penalty phase hearing.

42 Pa.C.S. §9711 defines and describes aggravating and mitigating circumstances. In a Pennsylvania capital case penalty phase hearing, the Commonwealth presents evidence of aggravating circumstances, which it must prove beyond a reasonable doubt. The defense then may present evidence of mitigating circumstances. The defense has the burden of proving the existence of mitigating circumstances which it must prove by a preponderance of the evidence. A death sentence results only if the Commonwealth has proved the existence of any aggravating circumstance beyond a reasonable doubt and (1) the defense fails to meet its burden of proving the existence of a mitigating circumstance, or (2) the jury finds the aggravating circumstances outweigh the mitigating circumstances. Otherwise, the verdict must be life imprisonment.

Aggravating circumstances are elements of capital murder. As *Ring* notes, aggravators "operate as statutory elements of capital murder under Arizona law . . . Because in their absence the death sentence is unavailable." *Ring,* 536 U.S. 584, 599, 122 S.Ct. 2428, 2438.

Not so with mitigators. The presence or absence of mitigators does not, in itself, determine the life versus death application. Therefore, unlike aggravating circumstances, there is no constitutional bar to placing on defendant the burden of proving mitigating circumstances.

So, where does an *Atkins* mental retardation claim fit? On the surface, it looks similar to two separate mitigating circumstances: "(2) The defendant was under the influence of extreme mental or emotional disturbance, and

(3) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." 42 Pa.C.S. §9711. But to determine effect, as opposed to label, the analysis must go deeper.

*Apprendi* holds that mentally retarded individuals cannot be executed. Not some, not even a few, but none. To paraphrase Justice Scalia's concurring language in *Ring,* the absence of mental retardation where mental retardation is properly at issue is a fact essential to the imposition of the death penalty.

Now the answers to the issues before the court present themselves. Since *Apprendi* holds that any fact that increases a penalty for a crime beyond a prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, and *Ring* holds that this concept applies to any facts that must be established in a penalty phase hearing to make the death penalty available, it follows that, where the *Atkins* mental retardation issue is properly raised, the Commonwealth bears the burden in a penalty phase hearing to prove beyond a reasonable doubt to a jury that a defendant is not mentally retarded.

Admittedly, this court's position takes a step beyond *Ring. Ring* involves a statutory aggravator, not a constitutionally-mandated precondition to the imposition of the death penalty. And *Ring* does not address burden of proof allocation; only *Apprendi,* a non-capital case, does. But the holdings and reasonings of these three cases, together, leave this court with the conviction that, if either the Pennsylvania or the United States Supreme Court

were presented with this precise issue, this court's result would follow. *Atkins* effectively makes a defendant's mental retardation—or, more precisely, the absence of mental retardation—an element of a capital offense. *Apprendi* holds any element of an enhanced penalty that is not present in the underlying offense must be decided by a jury upon proof by the Commonwealth beyond a reasonable doubt. And *Ring* extends *Apprendi's* concept to a capital crime penalty phase hearing.

In its brief, the Commonwealth makes two arguments against the finding this court has reached: (1) An *Atkins* mental retardation issue claim is analogous to insanity, which by statute (upheld by Pennsylvania's appellate courts) places the burden of proving insanity upon the defendant by a preponderance of the evidence; and (2) Several Pennsylvania appellate courts deciding *Atkins*-related issues have placed the burden of proving an *Atkins* claim on the defendant by a preponderance of the evidence.

The insanity statute upon which the Commonwealth's argument rests, 18 Pa.C.S. §315(a), provides: "Mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of the evidence that the actor was legally insane at the time of the commission of the offense." The statute applies only to guilt, not punishment, while the constitutional prohibition of *Atkins* applies only to death penalty determinations. The analogy thus fails.

The Commonwealth also cites *Miller,* 585 Pa. 144, 888 A.2d 624 (2005); *Commonwealth v. Crawley,* 592 Pa. 222, 226, 924 A.2d 612, 614 (2007) and *Common-*

*wealth v. Gibson,* 592 Pa. 411, 415, 925 A.2d 167, 169 (2007), as authority for this court to place the burden on the defendant to prove mental retardation by a preponderance of the evidence. These cases are inapposite. All involved PCRA proceedings. By statute, a petitioner/defendant must prove by a preponderance of the evidence his right to relief. 42 Pa.C.S. §9543(a). Because none of these cases involve an appeal from a burden of proof imposed in a capital case penalty phase hearing, they are distinguishable.

Although a jury decides whether a defendant is mentally retarded once that claim is properly put at issue, that does not mean the court lacks a practical role. The role the court continues to play in these claims is illustrated by *Commonwealth v. Vandivner,* 599 Pa. 617, 962 A.2d 1170 (2009).

In *Vandivner,* a case that arose after *Atkins* was decided, defendant pretrial raised a claim of mental retardation. After hearing, the trial court found defendant could not proceed with a mental retardation claim in his capital crime penalty phase hearing, should such a hearing occur. Defendant was found guilty of first-degree murder and, following a penalty phase hearing, defendant was sentenced to death.

On review, the Supreme Court upheld the trial court's decision not to permit defendant to advance an *Atkins* mental retardation defense.

The Commonwealth argues *Vandivner* places on the defendant the burden of proving, by a preponderance of the evidence, an *Atkins* mental retardation claim. Some language from the Supreme Court opinion might give comfort to that argument. From the actual *Vandivner*

holding, however, together with previous constitutional analysis, this court finds *Vandivner* stands for something other than what the Commonwealth contends.

In *Vandivner,* the trial court heard evidence that defendant was in a special education class until 1964-1965, when he dropped out in the 10th grade. The experts agreed no objective pre-18 mental retardation testing existed, and special education placement could have occurred because of behavioral issues.

Although the case language broadly talked about failures of defense proof, the *Vandivner* outcome is absolutely consistent with standard pretrial court dispositions. The trial court in essence found the defendant could not proceed with his *Atkins* claim because the defendant had failed to meet a burden of production; the evidence defendant presented on Criterion C, pre-18 mental retardation onset, even when read in a light most favorable to defendant, was legally insufficient to raise a triable issue of fact. Because Criterion C under *Miller* is a necessary element of an *Atkins* claim, defendant's failure to raise a triable issue of fact meant defendant, as a matter of law, could not proceed with his *Atkins* claim.

This ruling is no different from a trial court's dispositive authority in matters such as criminal habeas corpus or sufficiency of the evidence motions. Because the court is not invading the province of the jury as fact-finder, the proper granting of a dispositive motion, that is, a declaration that a jury will not hear an issue because, after reading the evidence presented, no triable issue of fact exists for a jury to decide, violates no Sixth Amendment considerations.

This discussion causes the court to reassess its blanket denial of a defense request for a pretrial *Atkins* review. Because the parties have not fully exchanged expert reports, it remains a possibility that, once the exchanges have happened, the defense may wish to seek pretrial dispositive relief. The court will modify its order accordingly.

### Commonwealth's Request for Discovery

Although the Commonwealth makes a single discovery motion, the court reads it as two distinct requests: (1) for an order requiring defense experts in their reports to sufficiently identify the bases for their opinions, particularly, any documents on which they relied to reach those opinions; and (2) for an order compelling defendant, or his experts, to produce these documents for the Commonwealth.

The Commonwealth's right to discovery is set out by rule. Pa.R.Crim.P. 573(C) defines the limits of Commonwealth discovery. Rule 573(C)(2) provides: "If an expert whom the defendant intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare and the defendant disclose a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion."

The Commonwealth here seeks identification of any documents relied on by defendant's mental health defendant intends to call at trial. The court finds the request

falls within the disclosure language of the rule. The court also finds the request is reasonable. The Commonwealth's mental health experts need to know the identity of records relied on by defense experts so the Commonwealth experts can examine the records themselves to test the bases of defense expert opinion. As such, the court will order the disclosure of the identity of records reviewed and relied on.

The court notes one defense expert has already submitted a report. Nonetheless, because the court finds this report does not meet the disclosure requirements of the rule, the court will order report amendment to conform it. To hold otherwise would lead to the absurd result that a report, even a grossly inadequate one, could escape the scrutiny of the rule.

The Commonwealth also requests defense production of the documents defense experts examined and relied upon. The rule does not provide for this, and the court does not find any right to Commonwealth discovery apart from the rule. Accordingly, the court denies this request. In doing so, the court notes no prejudice to the Commonwealth. It was noted at argument that the Commonwealth already possesses many of these documents and, following proper identification, it will be able to obtain any remaining ones.

The court's order follows.

### ORDER

And now, December 14, 2009 upon consideration of the Commonwealth's motion in limine regarding burden

of proof allocation of defendant's capital felony mental retardation claim, and the Commonwealth's requests for discovery involving this claim, the following order is entered:

(1) The court determines that, where a capital felony mental retardation claim is properly raised, the Commonwealth bears the burden of proving the absence of mental retardation to a jury on proof beyond a reasonable doubt.

(2) Per Pa.R.Crim.P. 573(C)(2), the court orders that defendant, within 30 days of the date of this order, supply to the Commonwealth an amended report from Dr. Tallichet that specifically identifies all materials relied upon by Dr. Tallichet in arriving at this opinion that defendant suffers from mental retardation.

(3) The Commonwealth's request for production of documents apart from those permitted under Pa.R.Crim.P. 573(C)(1) is denied.